IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 24, 2020 at Knoxville

## STATE OF TENNESSEE v. WILLIAM LANGSTON

**Appeal from the Criminal Court for Shelby County**
**No. 14-04014      J. Robert Carter, Jr., Judge**

_____

## No. W2019-01354-CCA-R3-PC

_____

William Langston, Petitioner, was initially indicted for voluntary manslaughter. The State obtained a superseding indictment charging Petitioner with first degree murder. Following a jury trial, Petitioner was convicted of second degree murder. This court affirmed his conviction on direct appeal, and the Tennessee Supreme Court denied further review. *State v. William Langston*, No. W2015-02359-CCA-R3-CD, 2017 WL 1968827, at *1 (Tenn. Crim. App. May 12, 2017), *perm app denied* (Tenn. Sept. 22, 2017). Petitioner filed for post-conviction relief claiming that he was denied the effective assistance of his first retained counsel ("trial counsel"). Following a hearing, the post-conviction court denied relief. On appeal, Petitioner asserts that trial counsel failed to convey to him a four-year settlement offer before the State obtained the superseding indictment. After a thorough review of the facts and applicable case law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and THOMAS T. WOODALL, J., joined.

Phyllis L. Aluko, District Public Defender, and Barry W. Kuhn (on appeal) and Phillip Harvey (at hearing), Assistant District Public Defenders, Memphis, Tennessee, for the appellant, William Langston.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual and Procedural Background

Petitioner originally hired trial counsel, but when the State obtained a superseding indictment, he dismissed trial counsel and retained new counsel ("defense counsel"). Concerning Petitioner's claim on direct appeal that trial counsel failed to convey to him a four-year settlement offer before the State obtained the superseding indictment, this court stated:

> On December 5, 2013, the Shelby County Grand Jury indicted [Petitioner] in case number 13-05917 for the voluntary manslaughter of his wife, Kimberly Langston. On August 19, 2014, the grand jury issued a superseding indictment in case number 14-04014 charging [Petitioner] with the first degree premeditated murder of his wife.
>
> On September 16, 2014, after submitting an order regarding the substitution of counsel in case number 13-05917 and prior to the prosecutor's arrival in court, defense counsel informed the trial court that [Petitioner] intended to enter an "open" guilty plea to the voluntary manslaughter charge, whereby he agreed to plead guilty and to be sentenced at the discretion of the trial court. He conceded that he had not yet spoken to the prosecutor about this guilty plea. The trial court, recognizing that [Petitioner] had been charged in a superseding indictment with first degree premeditated murder, stated that it would not take any action until the prosecutor appeared in court.
>
> When the prosecutor arrived a few minutes later, she announced the State's intention to proceed on the superseding indictment charging [Petitioner] with first degree premeditated murder and requested that the court sign a judgment entering a nolle prosequi to the indictment charging [Petitioner] with voluntary manslaughter. Defense counsel urged the trial court not to sign this judgment on the ground that [Petitioner] had already announced his intent to enter a plea to voluntary manslaughter. He also asserted that the indictment charging [Petitioner] with first degree premeditated murder was not a superseding indictment but a new indictment and that the State had been given several opportunities to dismiss the old indictment once it obtained the new indictment. When the trial court asked if the defense was under the impression that the State could not dismiss the indictment in case number 13-05917, defense counsel replied that the old indictment was pending when [Petitioner] appeared in

- 2 -

court that morning and that the State had not yet dismissed it. Defense counsel also claimed that [Petitioner] had a right to change his plea from not guilty to guilty pursuant to Tennessee Rule of Criminal Procedure 11. At that point, the trial court asserted that it had the discretion to determine whether to accept the plea, and defense counsel replied that the court's discretion was limited to determining whether there was a factual basis for the plea and whether the plea was knowing, intelligent, and voluntary. The court responded that it probably would have accepted [Petitioner]'s plea to voluntary manslaughter if it had occurred prior to the issuance of the new indictment, but that in light of the indictment charging him with first degree premeditated murder, [Petitioner] no longer had the option of entering a guilty plea to voluntary manslaughter. The court then granted the State's motion, entered the judgment dismissing the indictment for voluntary manslaughter, and rejected [Petitioner]'s attempt to enter a guilty plea.

Next, [Petitioner] filed an unsuccessful motion seeking permission to file an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure regarding the trial court's rejection of his plea to voluntary manslaughter before seeking an extraordinary appeal in this court pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. This court denied the Rule 10 appeal on January 30, 2015. *See State v. William Langston*, No. W2014-02202-CCA-R10-CD, slip op. at 1-4 (Tenn. Crim. App. Jan. 30, 2015) (Rule 10 Order).

*William Langston*, 2017 WL 1968827 at *1-2.

This court determined that the State's decision to dismiss the voluntary manslaughter charge was not "clearly contrary to manifest public interest" pursuant to *State v. Harris*, 33 S.W.3d 767, 771 (Tenn. 2000) and that "[a]bsent such a showing, the trial court was required to grant the State's request and dismiss the indictment for voluntary manslaughter." *William Langston*, 2017 WL 1968827, at *8. This court further determined that "the trial court did not abuse its discretion in rejecting [Petitioner's] guilty plea to voluntary manslaughter in case number 13-05917." *Id*.

This court affirmed Petitioner's conviction for second degree murder and the twenty-year sentence imposed by the trial court. *Id.* at *1.

### Post-Conviction Petition

Petitioner filed a *pro se* post-conviction petition with the assistance of a private law firm, who then declined to represent him. Petitioner claimed that trial counsel (1)

"failed to conduct any meaningful investigation into the case, the facts, or even interview the client;" (2) failed to review the discovery with Petitioner; (3) had "no meaningful working knowledge of this case up to the day he was discharged;" (4) failed to advise Petitioner as to the strength of the State's case, the likelihood of conviction, or the need to plead; and (5) failed to "warn" Petitioner of the possibility of a superseding indictment of more serious charges. Petitioner also claimed that defense counsel was deficient in failing to raise a Tennessee Rule of Evidence 404(b) issue on appeal.

After appointment of counsel, an amended petition was filed, which repeated the claims in the *pro se* petition and added that trial counsel failed to communicate any offers from the State; failed to advise [Petitioner] of the potential for and the wisdom in pursuing a plea agreement; and failed to advise [Petitioner] of the risk of superseding indictment for charges greater than voluntary manslaughter. The amended petition claimed that, if Petitioner had "understood the strength of the case against him, the risk of superseding indictment" and the possibility that he could settle his case pursuant to a plea agreement, "then he would have tried to settle the case long before the State obtained the superseding indictment in August, 2014." Post-conviction counsel filed an addendum withdrawing Petitioner's claim that defense counsel failed to raise a Tennessee Rule of Evidence 404(b) issue on appeal.

### Post-Conviction Hearing

The post-conviction court conducted a hearing over parts of two days. At the outset of the first day, the parties stipulated to the following timeline:

1. Kimberly Langston was killed on May 24, 2013.

2. On December 5, 2013, [Petitioner] was indicted for voluntary manslaughter under Indictment No. 13-05917.

3. On February 24, 2014, [trial counsel] arraigned [Petitioner].

4. The initial offer conveyed to the [d]efense by Assistant District Attorney General Marianne Bell was for a settlement by guilty plea to voluntary manslaughter with a sentence of [f]our [y]ears as a Range One-Standard Offender, "no PSS, no PSRS."

5. On May 12, 2014, the [c]ourt set the case to be tried by a jury on September 15, 2014.

- 4 -

6. On August 13, 2014, Ms. Bell filed pre[-]trial motions on behalf of the State in preparation for trial, and the State's motions were set to be heard on August 22, 2014.

7. On August 14, 2014, Ms. Bell emailed Saxon Durham, an employee within the prosecutor's office, and advised that she intended to seek a superseding indictment for [m]urder[-]first degree.

8. On August 19, 2014, the case was re-indicted as [m]urder[-][f]irst degree.

9. On August 22, 2014, at the hearing date for the State's pre[-]trial motions, [Petitioner] was informed by the [c]ourt of his new indictment for murder[-]first degree, and both indictments were continued until August 29, 2014.

10. On August 29, 2014, both indictments were continued until September 16, 2014.

11. On September 16, 2014, [defense counsel] appeared in [c]ourt and substituted as counsel for [Petitioner].

Petitioner testified that, after he was indicted, he received several letters from attorneys offering to handle his case, and he picked trial counsel. He said that his case was continued numerous times. He claimed that trial counsel never told him that there was an offer from the State, never discussed the possibility of a plea bargain, and never explained to him that there was the possibility that the State might obtain a superseding indictment. Petitioner said that his sister came with him to court on a number of occasions when he met with trial counsel but that she did not go to trial counsel's office. When further questioned about his sister's saying she went to trial counsel's office, Petitioner said he did not remember. He said he usually met with trial counsel thirty to forty minutes, but they discussed Petitioner's family and not the case. He said trial counsel advised him at a court hearing that the State had now charged him with first degree murder and that trial counsel needed another $10,000.00 to represent him on that charge. He said trial counsel did not explain to him the difference between first degree murder and voluntary manslaughter or tell him the penalty for first degree murder. Petitioner said his employer, Michael Reddoch, went with him to meet with trial counsel. After the meeting, Petitioner decided to retain different counsel, dismissed trial counsel, and employed defense counsel. He said that when they met for the first time, defense counsel said that he had "heard you turned down four years." Petitioner said he told him, "I never heard anything about that." He said defense counsel tried to get the trial court to

accept a plea to voluntary manslaughter. Petitioner said that he "felt that had [trial counsel] explained it to [him] and told [him] that, [Petitioner] never would be in that position that [he] was in then . . . [b]ecause [he] would have took [sic] the deal, [he] would have took the plea." Petitioner said defense counsel and Mr. Reddoch hired an attorney to help him draft the post-conviction petition.

On cross-examination, Petitioner again testified that trial counsel never told him about a four-year plea offer. Petitioner estimated that he met with trial counsel "three times at his office and the times that he came to court."

Mr. Reddoch testified that he knew Petitioner when he was a waiter at the Memphis Country Club and that, when Petitioner was laid off by the club, Mr. Reddoch hired Petitioner to work at his company, Accrabond Corporation. He said that he worked with Petitioner daily for almost two years. He said that Petitioner never mentioned a plea agreement or a four-year plea offer. He said that he met Petitioner's trial counsel on one occasion about ten days before the case was set for trial. He said that it was apparent to him that saying that trial counsel was "ill prepared" for trial would be "an understatement." He said that he asked about his plan for trial and that trial counsel did not have one. He said that trial counsel had not been to the crime scene, so he lent trial counsel a camera to use to take pictures of the scene. He said that, after the meeting with trial counsel, he and Petitioner discussed what trial counsel said at the meeting, and Petitioner then dismissed trial counsel and hired defense counsel.

Defense counsel testified that he was retained to represent Petitioner. He tried to talk to trial counsel but was never able to speak with him. Trial counsel sent defense counsel the discovery provided by the State, still stapled together. After going over the discovery and talking with Petitioner, defense counsel thought it was in Petitioner's "best interest at that point in time . . . to plead to a pending indictment." He said that he attempted to enter an open plea to voluntary manslaughter but that the trial court wanted the State to be present in court. After the trial court refused to allow Petitioner to plead to voluntary manslaughter, defense counsel sought, unsuccessfully, interlocutory and extraordinary relief. He said that he "went all the way up the chain" in an attempt to settle the case. He "met with [District Attorney] Weirich, [he] met with her assistant, [he] met with [Shelby County Assistant District Attorney Marianne] Bell (Ms. Bell) on multiple occasions trying to obtain an offer of voluntary manslaughter of anywhere within the range and was not successful at that at all."

Ms. Bell testified that, shortly after she was assigned to the Domestic Violence Prosecution Unit, she was assigned Petitioner's case. She said that, after arraignment, she provided electronic discovery to trial counsel. She identified a March 21, 2014 letter she sent to trial counsel, which was entered as Exhibit 2. The letter provided, "His offer

is: Voluntary Manslaughter-4 years, Range I, NO PSS or PSRS[.]" At the March 24, 2014 court setting, Ms. Bell gave trial counsel "a hard copy of the discovery packet with the offer written on the front." She said trial counsel stated that he would like to enter a presentence report and asked me "if I would be interested in possibly talking about upfront probation after I saw the presentence report." On the next court date, she said that trial counsel had a counter proposal of "six years with upfront probation." She met again with trial counsel on the May 12, 2014 trial setting. She advised trial counsel that the family of the deceased would not agree to upfront probation. She said that, when she spoke to the victim's family, she received additional information about prior abuse. She explained:

> I felt that there was a strong possibility that I would be submitting this case for re-indictment on a murder charge and I let [trial counsel] know that this is your final offer here, four years, with no petition [to suspend the remainder of the sentence], or I'm going to submit this for re-indictment.
>
> And, he kind of bolted back and so I said, I need you to make sure that your client understands that I may do this and that this is his final offer.
>
> And so, before we get a trial date and before I submit this for re-indictment, you know, let's make sure.

Ms. Bell said Petitioner was present in the court room during her discussion with trial counsel and that, after she explained the State's position concerning the final offer, trial counsel and Petitioner exited the courtroom together. She assumed that they were discussing her offer. She said that trial counsel "came back, inside, and said, no, no way, he wants six years upfront probation and I said, okay let's get a trial date then and I am probably going to submit this for re-indictment." She said that this was the first murder case that she had handled as lead prosecutor and that she had never before obtained a superseding indictment.

Trial counsel testified that he was retained by Petitioner. He said he appeared for Petitioner at arraignment and was provided discovery. He said that, written on the folder was "Discovery to [Petitioner], 3/21/14, offered voluntary manslaughter, four years, range one, no PSS, no PSRS." He said the abbreviations mean "that [Petitioner] could have a four-year sentence, he may not petition for probation, he may not ask for probation, four years to serve[.]" He said that is what he told Petitioner about the plea offer the day he received the discovery. Trial counsel stated:

> If I received it in the courtroom, I am not sure which way I received it, but if I received it in the courtroom I would have taken [Petitioner]

- 7 -

outside, once we got a new [c]ourt date, set him down in that lounge area over there and go over what his offer is.

And then, show him discovery and then I'll tell him this is how we do it, I'm going to go over to my office and I'll make you a copy, pick up a copy, take it home, make an appointment with me and come back and tell me what did I miss in this discovery.

Trial counsel said that he met with Petitioner a minimum of three times at his office. He said that he "spent about three hours" at the scene with the Petitioner in preparation for trial. He said that he told Petitioner "to tell me step by step exactly what happened, from beginning to end." Petitioner gave trial counsel a tour of the home, explaining "where his daughter would be sleeping and things like that[.]" He said that they discussed the "strengths and weaknesses" of Petitioner's case. He thought that Petitioner's twenty-year work history was a strength and the fact that Petitioner told the police that he exited the room because his wife was holding a knife but then came back into the room was a weakness. He also thought the fact that the victim was "shot right between the eyes" was a weakness. He said that, in hindsight, he might have done things differently because he "didn't understand at the time [the State made its final offer] that [Ms. Bell] was working with the family and getting more evidence." He stated:

And the whole reason we set it for trial is she's at four years in jail and I'm at, can we have probation, six years and we are at an impasse. It's not like she said, your offer is a trial. I mean, we are at an impasse at the point and time and then when we got to that impasse I said, I guess we have no other choice, so we set it for trial.

On cross-examination, trial counsel stated that he had been suspended from the practice of law for the three years beginning August 1, 2017. Concerning the State's four-year to serve offer, he said that he and Petitioner "weighed it back and forth, I mean, I knew we had to plead to something, I just didn't want to see him lose his job, you know."

### *Order Denying Petition for Post-Conviction Relief*

On July 19, 2019, the post-conviction court issued its written order denying relief. The court stated that "[i]n the case at hand, Petitioner presents one claim. He maintains that he was never conveyed an offer to plead guilty by [trial counsel]. He now states, that he would have accepted the offer." The post-conviction court noted that, on "cross-examination, Petitioner state[ed] he never discussed a possible guilty plea during the nine or ten months he was represented by [trial counsel], but that he was ready to enter a plea

'open to the court' on his first day with [defense counsel] (September 16, 2014)." The court stated, "Petitioner had always maintained that this was a matter of self-defense or accident. Only after [defense counsel] was hired and the superseding indictment was returned did the idea of an 'open' guilty plea come up."

The post-conviction court summarized the final in-court meeting between Ms. Bell and trial counsel as follows:

> After meeting with the victim's family, Ms. Bell met with [trial counsel] and told him the family was opposed to a probation offer. During the meeting with the family Ms. Bell learned of the history of abuse of the victim by Petitioner and suggested that she might re-submit the case to the grand jury if Petitioner did not want to settle the case.

> Ms. Bell communicated this "last chance" offer to [trial counsel] in court. [Trial counsel] and Petitioner left the courtroom to discuss the matter a final time. After their conversation [trial counsel] stated that Petitioner did not wish to accept the offer that included a jail sentence. Petitioner's response to the offer was, "no-way."

The post-conviction court noted that trial counsel "testified that he discussed the case many times with Petitioner and even visited the scene of the crime with him" and that "[trial counsel] attempted to negotiate a more favorable offer for Petitioner but one was not available. Petitioner, on the other hand, would not agree to serve any time."

In the "Conclusion" section of the order, the post-conviction court made the following findings:

> The hearing clearly demonstrates through the testimony of [Ms.] Bell, [trial counsel,] and the exhibits, themselves[,] that an offer of settlement was conveyed to the defense. It is not likely that through all of the continuous meetings and discussions that Petitioner was unaware of this option.

> The continuing negotiations by counsel indicate Petitioner's unwillingness to agree to any jail time.

> Once the case was re-indicted and [defense] counsel was retained[,] Petitioner tried to "go back" and enter a guilty plea. This is a classic example of "hindsight being 20-20." Petitioner did not want to enter any plea that involved serving a sentence in jail.

After his conviction and sentencing, he now wishes that he had made a different choice. This court finds that Petitioner could have entered a guilty plea in the first indictment on numerous occasions, but that he refused to do so.

Now, after experiencing the consequences of his decision he seeks to blame the attorney for his situation.

Petitioner has failed to prove that his trial counsel was defective. The Petition for Post-Conviction Relief is, hereby, denied.

## Analysis

On appeal, Petitioner claims that he received ineffective assistance of counsel because trial counsel failed to convey an offer of settlement to Petitioner before the State withdrew the offer and obtained a superseding indictment.

### *Standard of Review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### *Right to Effective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel,

a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

"The *Strickland* standard for determining whether a defendant received effective assistance of counsel applies during plea negotiations as well as during trial." *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012).

- 11 -

### *Trial Court's Findings Supported by the Evidence*

Ms. Bell testified that she electronically transmitted the settlement offer with the discovery to trial counsel and hand-delivered the discovery packet with the offer noted on the front to trial counsel in court. After meeting with the victim's family, Ms. Bell advised trial counsel that the victim's family was opposed to a settlement in which the sentence would be served on probation. She extended a "last chance" four-year "to serve" plea offer to trial counsel in court, after which trial counsel and Petitioner exited the courtroom together. Trial counsel returned to the courtroom and advised Ms. Bell that Petitioner would not accept an offer that included incarceration. Trial counsel told Ms. Bell that Petitioner's response to the offer was, "no-way." Trial counsel testified that he unsuccessfully "attempted to negotiate a more favorable offer" allowing Petitioner to serve his sentence on probation.

The post-conviction court found that "[t]he continuing negotiations by counsel indicate Petitioner's unwillingness to agree to any jail time." The testimony presented and exhibits entered into evidence at the post-conviction hearing support the post-conviction court's finding that Ms. Bell conveyed the offer of settlement to trial counsel, that trial counsel conveyed the offer to Petitioner, and that Petitioner rejected the offer. Based on its findings, it is apparent that the post-conviction court accredited the testimony of Ms. Bell and trial counsel and did not credit the testimony of Petitioner that trial counsel never conveyed the settlement offer to him.

Petitioner has failed to prove that trial counsel's performance was deficient and, therefore, is not entitled to relief. *Strickland*, 466 U.S. at 687 (1984).

### Conclusion

The judgment of the trial court denying post-conviction relief is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 12 -